IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LARRY LEON GREEN,                              )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )    Civil Action No. 22-87-E
                                               )
KILOLO KIJAKAZI,                               )
*Acting Commissioner of Social Security*,      )
                                               )
                    Defendant.                 )

## O R D E R

AND NOW, this 31st day of August, 2023, upon consideration of the parties'

cross-motions for summary judgment, the Court, upon review of the Commissioner of Social

Security's final decision denying Plaintiff's claim for disability insurance benefits ("DIB") under

Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, finds that the Commissioner's

findings are supported by substantial evidence and, accordingly, affirms.[1]   *See* 42 U.S.C. §

405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't*

*of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d

1211, 1213 (3d Cir. 1988)).  *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990)

(if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

---

[1]      Defendant asks the Court to tax costs against Plaintiff but does not advance an argument
in support of that request.  Accordingly, the Court will award no costs.  *See Pa. Dep't of Pub.*
*Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

court may neither reweigh the evidence, nor reverse, merely because it would have decided the

claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[2]

---

[2]      The issue here is whether the Administrative Law Judge ("ALJ") erred in applying
Listing 1.18, which was not in effect at the time of Plaintiff's application, rather than Listing
1.02, which was.  The Court discerns no legal error in the ALJ's consideration of the listings and
therefore will affirm.

        As part of the Social Security Administration ("SSA")'s sequential analysis, an ALJ must
determine, at Step Three, whether the claimant's impairment(s) meets or equals the criteria for a
listed impairment as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  This determination
is critical, because if a claimant meets a listing, a finding of disability is automatically directed.
*See id.* at § 404.1520(a)(4)(iii).  In the decision under review here, issued on January 7, 2022, the
ALJ considered whether Plaintiff's left shoulder impairment met or medically equaled Listing
1.18, which applies to impairments involving abnormality of a major joint in any extremity,
ultimately finding that the listing had not been met or equaled.  Plaintiff argues, though, that 1.18
was not the appropriate listing for such a condition here because it was implemented after the
application date in this case and after this matter was remanded from the United States District
Court by the Hon. Donetta Ambrose.  The Court disagrees and finds that the ALJ considered the
proper listing and that, in any event, any such error would have been harmless.

        Plaintiff initially filed his application for DIB on January 6, 2016.  An ALJ denied his
request on March 12, 2019, finding, *inter alia*, that Plaintiff's impairments did not meet or equal
Listing 1.02, pertaining to major dysfunction of a joint.  Plaintiff filed an appeal in federal court
at Case No. 1:20-CV-00124, and on March 1, 2021, Judge Ambrose granted the Commissioner's
motion for a voluntary remand and remanded the matter to the Commissioner for further
consideration.  In the meantime, the listings were amended to replace Listing 1.02 with 1.18,
effective April 2, 2021.  *See* 85 F.R. 78164-01 (Dec. 3, 2020).  On remand, Plaintiff's claim was
again denied, this time pursuant to an ALJ's decision dated January 7, 2022.  In that decision, the
ALJ did not consider Plaintiff's impairments in light of the previous listing – 1.02 – but under
the new one – 1.18.

        Plaintiff, as noted, has contended that the listing in effect at the time of his application
and the time of the remand should continue to govern.  In making this argument, he relies
heavily on the District Court for the District of Columbia's decision in *Cox v. Kijakazi*, No. 18-
cv-2389-FYP-GMH, 2022 WL 178953 (D.D.C. Jan. 19, 2022), in which the court held that an
ALJ's application of the amended version of Listing 12.05 in a case filed before the effective
date of the amendment was impermissibly retroactive.  The district court explained that the SSA
lacks the power to enact retroactive regulations and that, therefore, the version of Listing 12.05
in effect at the time the claimant filed her claim must be applied in her case.  *See id.* at **5-8.
While, at the time Plaintiff filed his summary judgment motion and brief, reliance on the district
court decision in *Cox* was quite reasonable, in the intervening time, the Court of Appeals for the
District of Columbia has reversed that decision.  *See Cox v. Kijakazi*, No. 22-5050, 2023 WL

4832071 (D.C. Cir. July 28, 2023).  In that decision, the appellate court left little doubt that it disagreed with the district court's retroactivity analysis.

In *Cox*, the appellate court held that application of the amended version of Listing 12.05 to the claimant's pending claim was not retroactive.  *See id.* at *1.  In so doing, it acknowledged that Congress had not granted the SSA the power to enact rules that are retroactive in effect, so the court went on to analyze the factors for determining whether a law or regulation would have retroactive effect set forth in *Landgraf v. USI Film Prod.*, 511 U.S. 244 (1994).  The court in *Cox* held that the application of the new version of the listings did not impair the claimant's vested rights (*i.e.*, rights already possessed when she filed the claim), did not impose any new duty or obligation, and did not deny the claimant fair notice, disrupt reasonable reliance, or impair settled expectations.  *See* 2023 WL 4832071, at **6-8.  The court emphasized that the claimant's "filing of her application for SSI benefits itself did not vest her with any legal right to have her claim decided under the 2014 Listings, as opposed to the 2017 Listings."  *Id.* at *6.  The court further observed:

> The Social Security Act does not provide claimants with the right to have their claims adjudicated under any particular Listings or similar regulatory interpretation upon application. Rather, the statute and implementing regulations simply instruct the Administration to award benefits only to claimants it finds to be disabled.

*Id.*  It also noted that a change in the listing was not dispositive of the claimant's case, since the listings merely "operate as a presumption of disability that makes further inquiry unnecessary," and that the claimant could still establish that she was disabled without invoking the listing.  *Id.* at *7.

While the D.C. Circuit Court's decision, like the D.C. District Court's decision, is not binding on this Court, the Court finds the rationale compelling.  As the D.C. Circuit explained, Plaintiff had no vested right to proceed under any specific version of the listings, the new listings imposed no new burdens or obligations on him, and he was not deprived fair notice and cannot be said to have "relied" on Listing 1.02 in any meaningful way.  The Court therefore agrees that application of Listing 1.18 was not retroactive.  In so doing, this Court also agrees with the other circuit courts that have found similarly.  *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006); *McCavitt v. Kijakazi*, 6 F.4th 692 (7th Cir. 2021).

Plaintiff cites to two Third Circuit opinions involving the same claim and claimant to support his argument that the ALJ here erred in applying the updated listings.  *See Christie v. Comm'r of Soc. Sec. Admin.*, 267 Fed. Appx. 146 (3d Cir. 2008); *Christie v. Comm'r of Soc. Sec. Admin.*, 489 Fed. Appx. 581 (3d Cir. 2012).  However, in neither of these decisions did the Third Circuit purport to engage in a retroactivity analysis under *Landgraf*.  Indeed, the Circuit Court specifically indicated that its decision that the regulations as they existed at the time of the claimant's initial adjudication should apply was based on "the unusual circumstances of this case."  *Id.* at 147.  It is also worth noting that the Third Circuit did not require the application of

the regulations in force when the claimant filed her claim for benefits, but rather at the time her claim was initially denied by an ALJ three years later.  As other courts have recognized, these opinions cannot reasonably be read to support the proposition that the Third Circuit has held that application of Social Security regulations effective after the claimant's claim was filed constitutes impermissible retroactive application.  As the District Court for the Eastern District of Pennsylvania recently explained in discussing the *Christie* opinions in regard to the retroactivity of SSA listings:

> On appeal, the Third Circuit provided, in the most perfunctory manner, that ***"under the unusual circumstances of this case ... the regulation in effect when the claim was first adjudicated should control the decision here."***  267 Fed. App'x at 147.  The Court cannot extrapolate from this brief and non-binding opinion (about a different rule change) to the conclusion that SSA's position in the instant case was entirely foreclosed, and therefore without color, as a matter of law.

*Rivera-Reyes v. Kijakazi*, No. 22-CV-02615, 2023 WL 4873645, at \*2 n.2 (E.D. Pa. July 31, 2023) (emphasis in original).  *See also Torres v. Kijakai*, No. 22-CV-2283, 2022 WL 17091877, at \*4 (E.D. Pa. Nov. 21, 2022).  This Court agrees that the *Christie* decisions do not set forth any specific guidance from the Third Circuit on this matter, much less that they were meant to create binding precedent.  Accordingly, the Court agrees with those courts that have directly addressed the issue, such as in *Cox*, *Combs*, and *McCavitt*, that application of an updated listing to a pending matter filed prior to the update does not constitute improper retroactivity.

Plaintiff further argues, however, that based on the SSA's own statements, the older listing should have been applied because his case was remanded by the federal court before Listing 1.18 became effective.  In so asserting, he cites to footnote 2 of the *Revised Medical Criteria for Evaluating Musculoskeletal Disorders* which provides:

> This means that we will use these final rules on and after their effective date in any case in which we make a determination or decision.  We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.  If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.

85 F.R. 78164-01 n.2.  He reasons that, if the revised rules are to be applied "[i]f a court reverses [the Commissioner's] final decision and remands a case for further administrative proceedings *after* the effective date of these final rules," the obverse must be true when a court remands a case *before* the effective date.  However, this ignores the language in the *Revised Medical Criteria for Evaluating Musculoskeletal Disorders* providing:

As we noted in the dates section of this preamble, these final rules
will be effective on April 2, 2021.  We delayed the effective date
of the rules to give us time to update our systems, and to provide
training and guidance to all of our adjudicators before we
implement the final rules.  The current rules will continue to apply
until the effective date of these final rules.  When the final rules
become effective, we will apply them to new applications filed on
or after the effective date of the rules, and to claims that are
pending on or after the effective date.

85 F.R. 78164-01.  This language clearly states that the new listings will apply to claims pending
after the effective date.  The footnote merely clarifies one aspect of this situation when court
review is involved.  Plaintiff's claim, having been remanded to the Commissioner on March 1,
2021, was clearly a pending claim when the new version of the listings became effective on
April 2, 2021.  Footnote 2 does not contradict this, but merely clarifies that the same would be
true even if Judge Ambrose had remanded the case after April 2.

Accordingly, the Court finds that the ALJ did not impermissibly apply Listing 1.18
retroactively.  Regardless, based on the ALJ's consideration of Listing 1.18, it is clear that
Listing 1.02 would not have been met or medically equaled in any event.  To satisfy Listing 1.18,
a claimant must establish that the criteria of subsections A,B,C, and D have been met.
Subsection D of the listing provides that the claimant must show:

**D.** Impairment-related physical limitation of musculoskeletal
functioning that has lasted, or is expected to last, for a
continuous period of at least 12 months, and medical
documentation of at least *one* of the following:

1. A documented medical need (*see* 1.00C6a) for a walker,
bilateral canes, or bilateral crutches (*see* 1.00C6d) or a wheeled
and seated mobility device involving the use of both hands
(*see* 1.00C6e(i)); or

2. An inability to use *one* upper extremity to independently
initiate, sustain, and complete work-related activities involving
fine and gross movements (*see* 1.00E4), *and* a documented
medical need (*see* 1.00C6a) for a one-handed, hand-held
assistive device (*see* 1.00C6d) that requires the use of the other
upper extremity or a wheeled and seated mobility device
involving the use of one hand (see 1.00C6e(ii)); or

3. An inability to use *both* upper extremities to the extent that
neither can be used to independently initiate, sustain, and
complete work-related activities involving fine and gross
movements (*see* 1.00E4).

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 14) is GRANTED as set forth herein.

s/Alan N. Bloch
United States District Judge

ecf:        Counsel of record

---

There is no argument that Plaintiff's left shoulder issues do not satisfy these criteria. The old listing for major dysfunction of a joint set forth at Listing 1.02B similarly provided that a claimant must show "[i]nvolvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively." Prior Listing 1.00B2c stated:

> Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

The ALJ's January 7, 2022 decision in this matter in no way provides that Plaintiff has an extreme loss of function in both upper extremities. It provides for no limitations as to Plaintiff's left upper extremity, and the limitations imposed on Plaintiff's ability to use his right upper extremity do not come close to demonstrating an extreme loss of function. Indeed, the prior ALJ found that Plaintiff's impairments did not satisfy Listing 1.02, and the case was not remanded on that issue. Therefore, even if the ALJ should have applied Listing 1.02 rather than Listing 1.18, the result would have been the same.

Accordingly, the Court finds that the ALJ applied the correct legal standards and that substantial evidence supports his decision. It will therefore affirm.